IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00766-PAB-STV

PARKER POWERSPORTS INC., a Colorado corporation, and
JOHN ALLEN, an individual,

    Plaintiffs,

v.

TEXTRON SPECIALIZED VEHICLES INC., a Georgia corporation, and
JOEL RANUM, an individual,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendants' Motion to Transfer Case [Docket No. 17]. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This lawsuit arises out of the termination of a franchise agreement (the "Agreement") between plaintiffs and defendants. Docket No. 4 at 2, ¶ 5. Defendant Textron Specialized Vehicles Inc. ("Textron") is a powersports vehicle[1] manufacturer. *Id.* at 4, ¶ 12(d). Defendant Joel Ranum is the District Sales Manager for Colorado, New Mexico, Western Nebraska, and El Paso, Texas. *Id.* at 3, ¶ 10. Plaintiff Parker Powersports Inc. ("Parker Powersports") was a powersports vehicle dealer in Douglas

---

[1] Powersports vehicles include motorcycles, all-terrain vehicles, utility task vehicles, and snowmobiles. Docket No. 4 at 2, ¶ 7.

County, Colorado.  *Id.* at 2-3, ¶ 7.  Plaintiff John Allen "founded, funded, managed, and owned Parker Powersports."  *Id.* at 3, ¶ 8.

Plaintiffs filed this lawsuit in the district court for Douglas County, Colorado asserting claims for declaratory judgment that the Agreement between the parties is invalidated by Colorado statute, fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, violations of Colo. Rev. Stat. § 44-20-423, and violations of Colo. Rev. Stat. § 6-1-105.  *Id.* at 27-37, ¶¶ 135-191.  On March 15, 2021, defendants removed the case to this Court.  Docket No. 1.

On May 12, 2021, defendants moved to transfer this action pursuant to 28 U.S.C. § 1404(a) to the Southern District of Georgia based on a forum selection clause in the Agreement.  Docket No. 17.  The forum selection clause provides in relevant part:

> [A]ny and all claims or disputes that in any way arise out of or relate to this Agreement, the negotiation or execution thereof, its performance, or the breach or enforcement thereof, or any claims or disputes that in any way concern the conduct of any party in connection with this Agreement, shall hereinafter be resolved, decided and litigated exclusively . . . in the United States District Court for the Southern District of Georgia, Augusta Division.

Docket No. 1-1 at 68.  On July 2, 2021, plaintiffs filed a response opposing defendants' motion to transfer.  Docket No. 38.  Plaintiffs claim that the forum selection clause is invalidated by a separate section of the agreement, that the forum selection clause should not be applied since it is contrary to Colo. Rev. Stat. § 44-20-101 to -440 (the "Powersports Act"), and that under traditional § 1404(b) analysis transfer is not warranted.  *Id.* at 6-11.

## II.  LEGAL STANDARD

Section 1404(a) provides:

2

> [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).  To determine whether transfer is appropriate under § 1404(a), courts weigh a number of private and public interest factors.  Relevant private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. Of Tex.*, 571 U.S. 49, 62 n.6 (2013) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  Public interest factors include: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law."  *Id.* (citation and bracket omitted)).

In the ordinary case, the party seeking transfer under § 1404(a) bears the "burden of establishing that the existing forum is inconvenient."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).  The analysis changes, however, when a motion for transfer is based on an applicable, mandatory, valid, and enforceable forum-selection clause.  *See Atl. Marine*, 571 U.S. at 62.  In this situation, "the plaintiff's choice of forum merits no weight" and "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."  *Id.* at 63.  Second, the court resolving the transfer motion may consider only public

3

interest factors and not the parties' private interests on the premise that parties who agree to a forum-selection clause "waive the right to challenge the preselected forum as inconvenient or less convenient." *Id.* at 64.  Finally, the "transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*  The practical effect of these adjustments to the transfer analysis is that "forum-selection clauses [will] control except in unusual cases." *Id.*

Before applying this modified analysis, a court must determine whether a valid and enforceable forum-selection clause applies to the parties' dispute.  "Forum selection clauses are presumptively valid under federal law, and should not be set aside unless the party challenging the clause demonstrates that enforcement would be unreasonable and unjust." *Archer v. Darling*, No. 09-cv-01988-PAB-KMT, 2011 WL 861201, at *2 (D. Colo. Mar. 9, 2011) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)).  A forum clause "should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Bremen*, 407 U.S. at 15.  Strong public policy creates a narrow exception to the presumptive validity of a forum selection clause and requires a "strong showing." *Id.*; *see Bowen Eng'g Corp. v. Pac. Indem. Co.*, 83 F. Supp. 3d 1185, 1190 (D. Kan. 2015) ("[F]ederal courts will give effect to a forum selection clause if the state policy against such clauses simply reflects the continued 'provincial attitude regarding the fairness of other tribunals.'" (quoting *Bremen*, 407 U.S. at 12)).

## III. ANALYSIS

### A.  Enforceability of the Forum Selection Clause

The parties do not contest that the language of the forum selection clause is mandatory and applicable to the current action.  *See* Docket No. 38; Docket No. 17 at 4-6.  However, the parties dispute whether the forum selection clause is enforceable.  *See* Docket No. 38 at 4-8; Docket No. 17 at 6.

Plaintiffs assert that enforcement of the forum selection clause contravenes public policy expressed in the Powersports Act.  *See* Docket No. 38 at 6.  The Act provides:

> (1) In the event of a dispute between a powersports vehicle dealer and a powersports vehicle manufacturer under a franchise agreement, *notwithstanding any provision of the agreement to the contrary:*
> (a) *At the option of the powersports vehicle* dealer, venue shall be proper in the county or judicial district where the dealer resides or has its principal place of business; and
> (b) Colorado law shall govern, both substantively and procedurally.

Colo. Rev. Stat. § 44-20-433 (emphasis added).

Additionally, Colo. Rev. Stat § 44-20-101(1) provides that:

> (a) The sale and distribution of motor vehicles affects the public interest, and a significant factor of inducement in making a sale of a motor vehicle is the trust and confidence of the purchaser in the retail dealer from whom the purchase is made and the expectancy that the dealer will remain in business to provide service for the motor vehicle purchased;
> (b) Proper motor vehicle service is important to highway safety and the manufacturers and distributors of motor vehicles have an obligation to the public not to terminate or refuse to continue their franchise agreements with retail dealers unless the manufacturer or distributor has first established good cause for termination or noncontinuance of the agreement, to the end that there shall be no diminution of locally available service.

Plaintiffs argue that, together, these provisions demonstrate that venue is proper only in Colorado because of Colorado's interest in public safety and purchasers' interest in continued service of their vehicles that can only be protected by enforcement of the Powersports Act in Colorado.  Docket No. 38 at 11-14.

Plaintiffs assert that the language of Section 44-20-433 is mandatory and not permissive, meaning that the forum selection clause is void.  Docket No. 38 at 19.  Defendants assert that the language in the statute is permissive and not mandatory, meaning that the parties' forum selection clause should be enforced and this case transferred.  Docket No. 17 at 7-9.  The Act states that:

> In the event of a dispute between a powersports vehicle dealer and a powersports vehicle manufacturer under a franchise agreement, notwithstanding any provision of the agreement to the contrary: (a) [a]t the option of the powersports vehicle dealer, venue shall be proper in the county or judicial district where the dealer resides or has its principal place of business.

Colo. Rev. Stat. § 44-20-433(1)(a).  "When interpreting a state statute in a diversity case, this court must apply state rules of statutory construction."  *United Rentals Nw. v. Yearout Mech.*, 573 F.3d 997, 1001 (10th Cir. 2009).  Neither side contests that this lawsuit constitutes a dispute between "a powersports vehicle dealer" and "powersports vehicle manufacturer" under a "franchise agreement."  *See* Docket No. 17 at 7-10; Docket No. 38 at 14-16.  Plaintiffs focus on the phrase "notwithstanding any provision of the agreement to the contrary," arguing that this language unambiguously manifests the General Assembly's "firm intent to override any choice of law and venue provision" in the franchise agreement.  Docket No. 38 at 15.  The Colorado Supreme Court has noted that, "[w]hen used in a statute, 'notwithstanding' is intended 'to exclude—not

6

include—the operation of other statutes.'"  *Goodman v. Heritage Builders, Inc.*, 390 P.3d 398, 402 (Colo. 2017) (quoting *Theodore Roosevelt Agency, Inc. v. Gen. Motors Acceptance Corp.*, 398 P.2d 965, 966 (Colo. 1965)).  The same is true concerning the Agreement, namely, that, regardless of any provision in the franchise agreement, a dealer may choose to file suit in the county where the dealer resides or has its principal place of business.

The fact that the statute authorizes venue in Colorado does not necessarily make the forum selection clause unenforceable.  It is only a part of the consideration on whether the narrow public policy exception applies.  Plaintiffs still must show that enforcement would "contravene a strong public policy of the forum in which the suit is brought."  *Bremen*, 407 U.S. at 15.  "[T]he requirement of a strong public policy must require more than a state's understandable desire to provide a judicial haven for businesses domiciled in the state."  *Brahma Grp., Inc. v. Benham Constructors, LLC*, 2009 WL 1065419, at *4 (D. Utah Apr. 20, 2009) (quotations omitted).  "The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts."  *Id.* (quoting *Bremen*, 407 U.S. at 9).  Plaintiffs argue that transfer to Georgia "would effectively deprive [p]laintiffs of their day in court because Georgia lacks anything approximating the Powersports Act" and that Georgia will not "apply the statute as faithfully as a Colorado district court."  Docket No. 38 at 10, 25-26.  Plaintiffs do not explain why the Southern District of Georgia cannot faithfully apply the statute and why this argument is not simply based on "provincial attitude[s] regarding

7

the fairness of other tribunals." *Bremen*, 407 U.S. at 12.  Plaintiffs' failure to articulate prejudice from the lack of a Colorado forum does not support the narrow *Bremen* exception.  *Compare Davis v. Oasis Legal Fin. Operating Co., LLC*, 936 F.3d 1174, 1181 (11th Cir. 2019) (invalidating a forum selection clause where the public policy interest behind a statute was preventing the "us[e of] forum selection clauses to avoid litigation in Georgia courts").

Plaintiffs argue that the forum selection clause is invalidated by another provision of the Agreement, which states, "[i]f performance or enforcement of this Agreement is unlawful under a valid law of any jurisdiction where the performance or enforcement is to take place, the performance or enforcement will be modified to the minimum extent necessary to comply with any such law."  Docket No. 1-1 at 63.  Plaintiffs argue that the Agreement violates Colo. Rev. Stat. § 44-20-423(1)(o), Docket No. 38 at 6-7, which states it is a violation for "any powersports vehicle manufacturer. . . to require, coerce, or attempt to coerce a powersports dealer to prospectively agree to a release . . . that would relieve any person of a duty or liability imposed under" the Powersports Act.  Colo. Rev. Stat. § 44-20-423(1)(o).  Plaintiffs allege that § 44-20-433, providing for venue in Colorado, "gives [p]laintiffs a duty to elect to bring a claim in Colorado" and makes defendants "liable for claims brought in Colorado."  Docket No. 38 at 7.  Plaintiffs argue that agreeing to a forum selection clause impermissibly waives this duty of plaintiffs and liability of defendants.  *Id.*  First, § 44-20-433 provides for venue "[a]t the option of the powersports vehicle dealer."  Colo. Rev. Stat. § 44-20-433(1)(a).  Plaintiffs do not explain why "an option" paradoxically creates a "duty."  Second, plaintiffs do not

8

explain why venue in Georgia would "waive" a liability that defendants would otherwise have under the Powersports Act.  The Court rejects both of plaintiffs' arguments as unreasonable interpretations of § 44-20-423(1)(o).  Thus, the Agreement does not violate § 44-20-423(1)(o).

Finally, plaintiffs allege that they were fraudulently induced to agree to the forum selection clause in the Agreement.  Docket No. 38 at 23-25.  First, plaintiffs' assertion contradicts the Agreement itself, which states that "[d]ealer has read this Agreement and understands it and has had adequate opportunity to consult with legal counsel of [d]ealer's own choosing regarding the content and meaning of this Agreement.  Dealer voluntarily has entered into this Agreement and acknowledges that each provision of this Agreement is reasonable, fair[,] and equitable."  Docket No. 1-1 at 66.  The Agreement also states that "[t]he parties further acknowledge that [the forum selection clause] is a material term of the Agreement and that neither party has fraudulently or unfairly induced or coerced the other to agree to this provision."  *Id.* at 68.  Second, plaintiffs' unspecific claims of fraud are insufficient to prevent enforcement of the forum selection clause.  "If a forum clause were to be rejected whenever a plaintiff asserted a generic claim of fraud . . . then forum clauses would be rendered essentially meaningless."  *REO Sales, Inc. v. Prudential Ins. Co.*, 925 F. Supp. 1491, 1495 (D. Colo. 1996).   Plaintiffs' only allegation involving fraudulent inducement states that defendant Textron was "blithely unaware of or knowing cavalier about the fact that Colorado law invalidates the choice of law and choice of venue provisions that Textron believes shielded it from liability."  Docket No. 1 at 2, ¶ 4.  This general claim is not

9

enough to defeat the forum selection clause. *Compare Niemi v. Lasshofer*, 770 F.3d 1331,1352 (10th Cir. 2014) (finding a forum selection clause was fraudulently included where a false statement was made to justify the inclusion of the forum selection clause). Plaintiffs have not plausibly alleged that the forum selection was fraudulently included in the Agreement.

For the foregoing reasons, the Court finds that the forum selection clause in the Agreement is valid.

### B.  Public Interest Factors

Transfer is allowed under § 1404 "to any district . . . where the case might have been brought[] or to any district to which the parties have agreed by contract or stipulation." *Atlantic Marine*, 571 U.S. at 59 (quotation omitted). The parties have agreed to venue in the Southern District of Georgia.[2] *See* Docket No 1-1 at 68. Because there is a valid forum selection clause, the defendants' motion to transfer is evaluated using public interest factors. *Id.* at 63. Arguments considering the private interests of the parties under § 1404 are deemed to be waived and private interests are to be considered "to weigh entirely in favor of the preselected forum." *Id.* at 64. The Court assumes all private interest factors, such as convenience to the parties and their witnesses, weigh in favor of transfer to the Southern District of Georgia. The burden is on plaintiffs to prove why this transfer is unwarranted based on public interest factors.

---

[2] The Court finds that even if plaintiffs have not consented to venue in Georgia, the action could have been brought in the Southern District of Georgia for § 1404 analysis because venue is proper under 28 U.S.C. § 1391(b)(1). *See Atlantic Marine*, 571 U.S. at 57.

*Id*. at 63-64.  In considering a motion to transfer, "[p]ublic-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law."  *Id.* at 62 n. 6 (quotations omitted).  These factors "will rarely defeat a transfer motion[.]"  *Id.* at 64.  Plaintiffs assert that transferring this case to the Southern District of Georgia will contravene the strong public policy interests expressed by the Powersports Act.  Docket No. 38 at 14-16.  For the reasons discussed above in Section II.A., plaintiffs do not meet their burden of showing that enforcing the forum selection clause would be "so gravely difficult and inconvenient" for plaintiffs as to deprive them of their "day in court" based on the public policy interests of the Powersports Act.  *Bremen*, 407 U.S. at 18.  Additionally, plaintiffs do not assert that there are any administrative difficulties related to trying the case in the Southern District of Georgia.  Accordingly, plaintiffs have not demonstrated that this is an "unusual case[]" warranting that the forum selection clause be voided to prevent transfer.  *Atlantic Marine*, 571 U.S. at 64.

11

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Motion to Transfer Case [Docket No. 17] is **GRANTED.** It is further

**ORDERED** that, pursuant to 18 U.S.C. § 1404(a), this case is transferred to the United States District Court for the Southern District of Georgia.

DATED March 16, 2022.

                                          BY THE COURT:

                                          _____
                                          PHILIP A. BRIMMER
                                          Chief United States District Judge