IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

PARKER POWERSPORTS INC. and          *
JOHN ALLEN,                          *
                                     *
        Plaintiffs,                  *
                                     *          CV 122-054
        v.                           *
                                     *
TEXTRON SPECIALIZED VEHICLES         *
INC. and JOEL RANUM,                 *
                                     *
        Defendants.                  *

---

**O R D E R**

---

Before the Court is Textron Specialized Vehicles Inc. ("TSV") and Joel Ranum's (collectively, "Defendants") motion to dismiss Parker Powersports Inc. ("Parker Powersports") and John Allen's (collectively, "Plaintiffs") Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 10.) Defendants filed the present motion in lieu of an answer. For the following reasons, Defendants' motion is **GRANTED.**

## I. BACKGROUND

This case arises out of a franchise agreement (the "Agreement") between Plaintiffs and Defendants. (Compl., Doc. 4, at 1-2.) Notably though, neither Plaintiff brings a claim for breach of contract. Instead, Plaintiffs seek a declaratory judgment that the forum selection and choice of law provisions in the Agreement are rendered invalid due to Colo. Rev. Stat. § 44-

1

20-433 and bring claims of fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and allege violations of Colo. Rev. Stat. § 44-20-423 (the "CO Dealer Act") and Colo. Rev. Stat. § 6-1-105 (the "CO Consumer Protection Act").  (Id. at 27-37.)

TSV is a powersports vehicle[1] manufacturer, and Mr. Ranum is a district sales manager for TSV.  (Id. at 3.)  Mr. Ranum's district includes Colorado, New Mexico, Western Nebraska, and El Paso, Texas.  (Id.)  Parker Powersports was a powersports vehicle dealer in Douglas County, Colorado.  (Id. at 2-3.)  Mr. Allen "founded, funded, managed, and owned Parker Powersports."  (Id. at 3.)  In February 2017, Mr. Allen, while preparing to open Parker Powersports, met with TSV to discuss potentially being an ARCTIC CAT® ("Arctic Cat") powersports vehicle dealer.  (Id. at 20.)  Mr. Ranum told Mr. Allen that "he believed Parker Powersports had the potential to become the largest Arctic Cat retailer in Colorado." (Id.)  Based on this information, Mr. Allen formed Parker Powersports, and in June 2017, Parker Powersports signed the first Agreement and became an Arctic Cat and TEXTRON OFF-ROAD® ("Textron Off-Road") dealer.  (Id. at 20-21.)  On September 14, 2018, Mr. Allen, on behalf of Parker Powersports, signed a new copy of the Agreement.  (Id. at 21.)  Under the new Agreement, among other obligations, Parker Powersports was required to have a minimum

---

[1] Powersports vehicles include motorcycles, all-terrain vehicles, utility task vehicles, and snowmobiles.  (Compl., at 2.)

number of Arctic Cat and Textron Off-Road vehicles[2] in stock at the dealership. (Id.)

On January 17, 2019, TSV announced a partnership with the brand Tracker to introduce a new Tracker Off-Road line of ATV and side-by-side vehicles. (Id. at 8.) Tracker is a "house brand" of Bass Pro Shops, and starting in May 2019, Tracker Off-Road vehicles were sold at all Bass Pro Shops, Cabela's, and over 600 independent Tracker dealers worldwide. (Id. at 9, 11.) According to Plaintiffs, these Tracker Off-Road vehicles were not "new models" designed in partnership with Tracker, but instead were "essentially carbon copies of [Arctic Cat vehicles], with just a different name slapped on the side." (Id. at 12.) However, the Tracker Off-Road vehicles were cheaper than the Arctic Cat vehicles. (Id. at 14-15, 23.) Plaintiffs allege that Defendants focused on promoting the Tracker Off-Road vehicles, which came at the expense of Arctic Cat dealers like Plaintiffs. (Id. at 16-17, 22.) According to Plaintiffs, Defendants focused on manufacturing and building up the inventory of the new Tracker Off-Road vehicle models and pushed Plaintiffs to purchase older, unwanted Arctic Cat vehicle models. (Id. at 22.) Because Plaintiffs were unable to acquire new Arctic Cat vehicles from TSV, their sales of Arctic Cat vehicles fell, and to offset this

---

[2] The Plaintiffs use Arctic Cat and Textron Off-Road vehicles interchangeably because in January 2019, Defendants TSV changed the name of the Textron Off-Road vehicles to "Arctic Cat" starting with the 2020 models. (Compl., at 11.) Accordingly, the Court will also refer to Arctic Cat and Textron Off-Road vehicles both as Arctic Cat vehicles.

decline in sales, they picked up an additional powersports brand, Kymco. (Id. at 24.)

After back-and-forth emails between Mr. Allen and Mr. Ranum discussing Plaintiffs' complaints with the availability of the Arctic Cat vehicles and Defendants' concerns with Plaintiffs' sales, by January 2020, Mr. Allen decided to terminate the Agreement and close Parker Powersports. (Id. at 24-26.) Following the closure, Mr. Allen notified Mr. Ranum they still had "[four] new and unmodified Arctic Cat vehicles on hand," but Mr. Ranum informed Mr. Allen they would not be taking those vehicles back. (Id. at 27.) Mr. Allen "[took] a substantial loss on the vehicles in order to sell them prior to losing the Parker Powersports building." (Id.)

On January 15, 2021, Plaintiffs filed this lawsuit in the district court for Douglas County, Colorado. (See Doc. 1-1.) On March 15, 2021, Defendants removed the case to the United States District Court for the District of Colorado, and on March 16, 2022, this case was transferred to this Court based on Defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a). (See Docs. 1, 52.) Prior to the transfer, on April 5, 2021, Defendants filed the present motion to dismiss. (Doc. 10.) Plaintiffs responded in opposition to the motion. (Doc. 18.) Defendants filed a reply in support. (Doc. 32.) The Court's findings are below.

4

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993)

5

(citing <u>Exec. 100, Inc. v. Martin Cnty.</u>, 922 F.2d 1536, 1539 (11th Cir. 1991)).

## III. DISCUSSION

Defendants argue that Plaintiffs' claims should be dismissed for various reasons. (<u>See</u> Doc. 10.) Their two main arguments are that Plaintiffs have failed to state a claim upon which relief may be granted, and Plaintiffs fail to allege fraud with sufficient particularity. (<u>Id.</u> at 1-3.) The Court addresses the more specific arguments below on a claim-by-claim basis.

### A. Declaratory Judgment to Invalidate Forum Selection and Choice of Law Provisions in the Agreement (Count I)

First, Plaintiffs seek a declaratory judgment that Colo. Rev. Stat. § 44-20-433 invalidates the provisions in the Agreement that provide that any legal action must be brought in Georgia and Georgia law governs the Agreement. (Compl., at 27-28.) Defendants argue the forum selection provision is valid because the statute Plaintiffs rely on "merely permits but does not mandate dispute resolution in Colorado." (Doc. 10, at 4.) Defendants raise no specific arguments for the choice of law provision other than stating that the statute does not invalidate the provision, however, they apply Colorado law throughout their brief. (<u>See id.</u>) In response, Plaintiffs argue "there is no world in which both [Section] 44-20-433(1) and the law and venue provisions in the [Agreement] can coexist . . . ." (Doc. 18, at 5.)

6

Specifically, Plaintiffs argue that once they elected to file in Colorado, venue was proper there, and Colorado law governs, both substantively and procedurally, based on [Section] 44-20-433. (Id.)

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "For a controversy to exist, the facts alleged, under all the circumstances, must show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Bitco Gen. Ins. Corp. v. Kelluem, No 1:16-cv-168, 2017 WL 5244803, at *2 (S.D. Ga. May 4, 2017) (citation omitted).

Notably, the District of Colorado Court already found the forum selection provision was valid and enforceable when it transferred the case to this Court. (See Doc. 52, at 10.) Therefore, the Court does not find there is a controversy remaining on the forum selection provision. As for the choice of law provision, Defendants do not raise any arguments, other than stating that the choice of law provision in the Agreement is valid, but they apply Colorado law throughout their brief and reply. (See Doc. 10, at 4; Doc. 32.) Because Defendants have not properly

raised their choice of law argument, the Court finds that this argument is waived. See Insituform Techs., Inc. v. AMerik Supplies, Inc., 850 F. Supp. 2d 1336, 1355 (N.D. Ga. 2012) (citing Mesa Air Grp., Inc. v. Delta Air Lines, Inc., 573 F.3d 1124, 1128 (11th Cir. 2009)) (finding a party waived its choice of law argument when it failed to present any choice of law analysis). Therefore, there is also no controversy as to the choice of law provision. Accordingly, because there are no controversies as to the forum selection and choice of law provisions, the Court finds declaratory judgment is improper and Plaintiffs' claim for declaratory relief is dismissed.

## B. Fraud-based Claims (Counts II, III, IV, V)

Next, Plaintiffs bring claims of fraudulent inducement, fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation. (Compl., at 28-35.) Plaintiffs argue that Defendants provided them false and misleading information or omitted material information and their reliance on Defendants' misrepresentations and omissions caused them damages. (Id.) Defendants argue that Plaintiffs' fraud-based claims must be dismissed for several reasons: (1) the allegations of fraud were not pleaded with particularity as required by Federal Rule of Civil Procedure 9(b); (2) the factual allegations, even if taken as true, fail to show misrepresentation or omission of a material fact required for Plaintiffs' fraud-based claims; and (3) the economic loss doctrine bars all of Plaintiffs' fraud-based claims.

(Doc. 10, at 11-17.)  In response, Plaintiffs argue the Complaint sufficiently pleads fraud with particularity, the allegations show misrepresentation or omission of a material fact, and the economic loss doctrine is inapplicable to their fraud claims based on Colorado law.  (Doc. 18, at 20-31.)  The Court will address the arguments under each claim.

1. Fraudulent Inducement (Count II)

Plaintiffs allege Defendants' fraud and misrepresentation induced them to enter into the Agreement, they were justified in relying on the Defendants, their reliance directly and proximately caused the damages, and there was no "meeting of the minds." (Compl., at 28-30.)  Specifically, Plaintiffs argue that Defendants misrepresented:

(a) That [TSV] was looking to foster an atmosphere conducive to a long-term partnership between it and Plaintiffs;

(b) That [TSV] was looking to build a business together with Plaintiffs;

(c) That [TSV] was heavily investing in, and would continue to heavily invest in, the Arctic Cat Off[-]Road line of powersports vehicles and the Arctic Cat Off[-]Road powersports vehicle dealers;

(d) That [TSV] would aggressively market and support its network of Arctic Cat powersports vehicle dealers, including [Parker Powersports];

(e) That [TSV] was making sure, and would continue to make sure, its dealers would have great product availability;

(f) That [TSV] would ensure all its dealers would operate on a fair and even playing field, and that it would not

9

give preferential treatment or pricing to one dealer over another;

(g) That [TSV] would not produce its product under the false guise of a different "line-make" in order to circumvent its obligations pursuant to the [] Agreement; and

(h) That the Tracker Off[-]Road powersports vehicles were a different line-make, when, in fact, they were identical to the Arctic Cat Off[-]Road vehicles and were, for all intents and purposes, the same.

(Id. at 28-29.)    Defendants argue these allegations of misrepresentation are insufficient under Rule 9(b) because the Complaint "does not provide the dates of any messages or meetings, the materials to which it refers, or the specific individuals who conveyed the messages or made the promises." (Doc. 10, at 12.) Moreover, Defendants argue these messages or promises, if true, were made after the execution of the Agreement, so it is impossible that Plaintiffs relied on these statements when entering into the Agreement. (Id. at 13.) In response, Plaintiffs argue Defendants overlooked or misread their Complaint because they sufficiently allege the dates of the messages or meetings and who conveyed them. (Doc. 18, at 20.) For example, Plaintiffs allege in their Complaint that in February 2017, Mr. Allen began meeting with Defendants to discuss becoming an Arctic Cat dealer, and during these meetings was told that TSV was looking to grow the Arctic Cat brand and product offerings and would support its dealer network. (Id. at 21 (citing Compl., at 7, 20).) Plaintiffs also allege that an Arctic Cat press release dated January 25, 2017

10

claimed that TSV and Arctic Cat "will be well positioned to be a powersports industry leader with a wider product line-up, and allow for more aggressive investment in product development, dealer networks, marketing and customer service." (Id. (quoting Compl., at 6).) Based on a combination of these representations, Plaintiffs claim they started Parker Powersports and signed a new copy of the Agreement in such continued reliance on these representations. (Id. at 21-22 (citations omitted).)

To establish a claim for fraudulent inducement, Plaintiffs must plead and prove the following: (1) defendant made a knowing misrepresentation of a material fact; (2) plaintiff relied on the material misrepresentation; (3) plaintiff was justified in relying on the misrepresentation; and (4) plaintiff suffered damages as a result of that reliance. Williams v. Boyle, 72 P.3d 392, 399 (Colo. App. 2003). Moreover, Rule 9(b) requires Plaintiffs to plead with particularity that Defendants knowingly made false statements or omitted a material fact that Plaintiffs reasonably relied upon that caused them damages. See FED. R. CIV. P.9(b) (A plaintiff is required to "state with particularity the circumstances constituting fraud.") Compliance with Rule 9(b) requires a complaint to set forth the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the

11

plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

Kabir v. Statebridge, Co., No. 1:11-cv-2747, 2011 WL 4500050, at

*6 (N.D. Ga. Sept. 27, 2011) (citing Thomas v. Pentagon Fed. Credit

Union, 393 F. App'x 635, 638 (11th Cir. 2010)).

Here, the Court finds that Plaintiffs' Complaint does not plead with the particularity required under Rule 9(b) for the fraudulent inducement claim. Unlike the complaint in Innovatier, Inc. that specifically identified who made representations, when they were made, and why it was misleading or false, Plaintiffs do not allege why the representations listed under Count II were misleading or false which is a required element for a fraudulent inducement claim. See Innovatier, Inc. v. CardXX, Inc., No. 08-CV-00273, 2010 WL 148285 (D. Colo. Jan. 8, 2010). Therefore, the Court finds the Complaint is devoid of allegations sufficient to satisfy Rule 9(b)'s heightened pleading standard because Plaintiffs fail to allege why those representations were misleading or false. Accordingly, Plaintiffs' claim for fraudulent inducement shall be dismissed.

2. Fraudulent Misrepresentation (Count III) and Fraudulent Concealment (Count IV)

Next, Plaintiffs also bring claims for fraudulent misrepresentation and fraudulent concealment, alleging that Defendants provided them false and misleading information or concealed material facts. (Compl., at 30-33.) Specifically, Plaintiffs allege that Defendants "communicated misrepresentations

12

of material fact to Plaintiffs regarding [TSV]'s business relationship with Plaintiffs and the [Arctic Cat Off-Road] products" and "concealed material facts regarding its true plans for both [TSV]'s business relationships with its dealers and its products." (Id. at 30, 32.)

Similar to a claim for fraudulent inducement, the elements of fraudulent misrepresentation are:

> (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff.

Bristol Bay Prods., LLC v. Lampack, 312 P.3d 1155, 1160 (Colo. 2013) (citation omitted). The elements of fraudulent concealment are:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

BP Am. Prod. Co. v. Patterson, 263 P.3d 103, 109 (Colo. 2011) (citation omitted). Furthermore, "the ignorance and reliance elements of a fraudulent concealment claim may be established with circumstantial evidence." Id. at 110. To allege fraud based on an omission, a plaintiff must identify "the particular information that should have been disclosed, the reason the information should

13

have been disclosed, the person who should have disclosed it, and the approximate time or circumstances in which the information should have been disclosed." Martinez v. Nash Finch Co., 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012) (quoting S.E.C. v. Nacchio, 438 F. Supp. 2d 1266, 1277 (D. Colo. 2006)).

Defendants argue Plaintiffs' claims for fraudulent misrepresentation and fraudulent concealment must be dismissed because Plaintiffs fail to allege a false statement or omission of material fact. (Doc. 10, at 15-17.) Defendants organize the alleged misrepresentations or omissions attributed to them into the following categories: (1) "Public statements and press releases regarding new partnerships, leadership changes at [TSV], and product lines—including TRACKER OFF[-]ROAD®"; (2) "Representations about dealer relationship and investment in the ARCTIC CAT® product line and dealer support"; (3) "Statements by Mr. Ranum about need to meet sales obligations under the [Agreement]"; and (4) "Failure to disclose plans for TRACKER OFF[-]ROAD® product line". (Doc. 10, at 15-16.) Defendants argue that generalized public statements and press releases "cannot trigger liability because [they] amount[] to mere puffery . . ." to which "no reasonable person would rely on as assertions of particular facts." (Id. at 16 (quoting Alpine Bank v. Hubbell, 555 F.3d 1097, 1106 (10th Cir. 2009)).) Further, Defendants contend that even if the factual allegations of the Complaint are taken as true, Plaintiffs have not alleged intentionality, as required under both

fraudulent misrepresentation and concealment, but instead merely show puffery and future promises which are not actionable as a matter of law. (Id. at 16.) Defendants also argue "[e]xpressions of opinions are not actionable in fraud." (Id. at 17 (citation omitted).)

In their response, Plaintiffs attack Defendants' categorization of the allegations for several reasons. (Doc. 18, at 26-31.) First, Plaintiffs argue that Defendants fail to argue that the public statements and press releases are mere puffery. (Id. at 27.) However, regardless of deciding whether these public statements and press releases are mere puffery, the Court finds the Complaint fails to show how these statements were misrepresentations or omissions of material fact. Nowhere in the Complaint do Plaintiffs ever explain why these statements were false. Second, Plaintiffs argue that Defendants selectively highlight certain paragraphs but omit the surrounding paragraphs. (Id. at 28.) For example, Plaintiffs point out that Defendants, in discussing paragraph 25 in their motion, omit the language of paragraph 26 through 28. (Id.) While true that Defendants did not include the entirety of the Complaint in their categorization, upon review of the Complaint, the Court is still not convinced how the omitted paragraphs show how the representations by Defendants were false. Third, Plaintiffs argue the Complaint pleads that "Defendants knew in 2017 that their promises were false, and therefore Defendants' Motion must be reviewed based on the

15

assumption that Defendants knew." (Id. at 28-29.) Upon reviewing the paragraphs Plaintiffs cite in support of their argument, the Court finds these are merely conclusory allegations that assert the language of the elements required for each claim but do not explain why Defendants' statements were false or that Defendants intentionally made false statements or omitted material facts. Lastly, Plaintiffs contend that the allegations that relate to Mr. Ranum telling Plaintiffs they must accept old products are not misrepresentations, "but rather Defendants' actual intent." (Id. at 29-30.) Because Plaintiffs do not allege Mr. Ranum's statement as a misrepresentation, the Court will not consider it in determining whether Plaintiffs' Complaint is sufficient. For the foregoing reasons, the Court finds that Plaintiffs' Complaint fails to sufficiently allege a false statement or omission of a material fact. Accordingly, Plaintiffs' claims for fraudulent misrepresentation and fraudulent concealment shall be dismissed.

   3. <u>Negligent Misrepresentation (Count V)</u>

   Plaintiffs also bring a claim of negligent misrepresentation claiming that Defendants gave false information to Plaintiffs that they knew or had reason to know was false, and Plaintiffs' reliance on this information directly and proximately caused their damages. (Compl., at 34-35.) Defendants argue Plaintiffs fail to allege a false statement of fact and that negligent misrepresentation cannot be based on a future promise to act. (Doc. 10, at 17

(citations omitted).) To bring a claim of negligent misrepresentation, Plaintiffs must plead the following:

> (1) one in the course of his or her business, profession or employment; (2) makes a misrepresentation of a material fact, without reasonable care; (3) for the guidance of others in their business transactions; (4) with knowledge that his or her representations will be relied upon by the injured party; and (5) the injured party justifiably relied on the misrepresentation to his or her detriment.

Allen v. Steele, 252 P.3d 476, 482 (Colo. 2001). A negligent misrepresentation claim, like the three fraudulent claims above, requires misrepresentation of a material fact due to a lack of reasonable care, with the intent that Plaintiffs rely on that misrepresentation to their detriment. Id. For the same reasons stated above, Plaintiffs have failed to allege a misrepresentation of a material fact. Therefore, this claim shall also be dismissed.

Accordingly, all of Plaintiffs' fraud-based claims are dismissed for failure to state a claim. Because the Court dismissed Plaintiffs' fraud-based claims based on the insufficiency of the Complaint, the Court does not address Defendants' arguments related to the economic loss doctrine.

## C. CO Dealer Act Claims (Count VI)

Plaintiff alleges that Defendants violated eleven different sections under the CO Dealer Act: Section 44-20-423(1)(b), Section 44-20-423(1)(c), Section 44-20-423(1)(e), Section 44-20-423(1)(j)(I), Section 44-20-423(1)(k), Section 44-20-423(1)(l), Section 44-20-423(1)(r)(I) and (1)(u), Section 44-20-423(1)(p),

Section 44-20-423(1)(q), Section 44-20-423(1)(x), and Section 44-20-423(1)(z).   (Compl., at 35-36.)   Defendants move to dismiss Plaintiffs' Count VI for failure to state a claim and because Mr. Allen lacks standing to assert any of the alleged violations of the CO Dealer Act.   (Doc. 10, at 6-11.)   Defendants organize these alleged violations into three groups, and Plaintiffs also adopt the grouping in their opposition.   (See id.; Doc. 18, at 6-19.) Accordingly, the Court begins with addressing whether Mr. Allen has standing to assert any of the alleged CO Dealer Act violations and then will address the specific arguments under each group below.

### 1. Mr. Allen's Standing

First, Defendants argue Mr. Allen does not qualify as an individual who can bring a claim under the CO Dealer Act.   (Doc. 10, at 11.)   According to Defendants, the statute only allows for standing under three circumstances: (1) under Section 44-20-432(1), a person has a right of action against a dealer; (2) under Section 44-20-432(2), a person has a right of action against a manufacturer if that person is harmed by an unlawful act under Section 44-20-423(1)(a); and (3) under Section 44-20-432(3), a licensee has a right of action against the manufacturer.   (Id. (citations omitted).)   Plaintiffs argue Mr. Allen is a "licensee" and has standing to bring claims under Section 44-20-423(3).   (Doc. 18, at 19.)   Plaintiffs also contend Mr. Allen is a "licensed used powersports vehicle salesperson[]" and is therefore a licensee.

18

(Id.)  But  as  Defendants  correctly  point  out  in  their  reply, Plaintiffs  did  not  allege  anywhere  in  their  Complaint  that  Mr. Allen  is  a  licensed  used  powersports  vehicle  salesperson,  and  they cannot  rewrite  their  Complaint  in  their  opposition  to  Defendants' motion  to  dismiss.  (Doc. 32, at 10.)  Moreover,  the  Court  agrees with  Defendants  that  even  if  Mr.  Allen  qualifies  as  a  licensee, the  Complaint  does  not  allege  he  suffered  any  individual  damage from  the  alleged  violations  of  the  CO  Dealer  Act  that  are  distinct from  those  sustained  by  Parker  Powersports.   (Id.)   Therefore, because  the  CO  Dealer  Act  only  permits  those  who  suffer  harm  "by reason  of  any  unlawful  act"  prohibited  in  the  statute  to  bring suit,  the  Court  finds  Mr.  Allen  lacks  standing  as  an  individual  to bring  claims  for  violations.   Accordingly,  Mr.  Allen's  claim  for violation  of  the  CO  Dealer  Act,  as  an  individual,  is  dismissed. The  Court  will  address  if  the  Complaint  sufficiently  pleads  Count VI  brought  by  Parker  Powersports  to  determine  whether  it  should  be dismissed  for  failure  to  state  a  claim.

   2. Violations   of   subsections   (1)(j)(I),   (1)(p),   (1)(q), (1)(x),  and  (1)(z)  under  the  CO  Dealer  Act

   Starting  with  the  first  group  of  violation  allegations, Parker  Powersports  alleges  the  following  against  the  Defendants:

   ([1]) Defendants failed to offer to all the same dealers all
   of the models it manufactured.  More specifically, Defendants
   fraudulently claimed the line of Tracker Off[-]Road products
   was a different "line make" than the Arctic Cat Off[-]Road
   products, and did not offer Plaintiffs the Tracker Off[-]Road
   products  and  pricing,  in  violation  of  [Section]  44-20-
   423(1)(j)(I);

\*\*\*

([2]) Defendants discriminated between and refused to Plaintiffs all of the models manufactured by Arctic Cat based upon reasonable sales and service standards, in violation of [Section] 44-20-423(1)(p);

([3]) Defendants failed to make practically available the incentives, rebates, bonuses, or other similar benefits to Plaintiffs that it offered to other Colorado dealers, in violation of [Section] 44-20-423(1)(q);

([4]) Defendants sold or offered to sell essentially the same new powersports vehicles to dealers at a lower actual price than the actual price it offered to Plaintiffs, in violation of [Section] 44-20-423(1)(x); and

([5]) Defendants used unreasonable, arbitrary, and unfair performance standards in determining Plaintiffs' compliance with the [] Agreement, when viewed in light of [TSV]'s fostering of unfair competition with its Tracker Off[-]Road strategy, in violation of [Section] 44-20-423(1)(z).

(Compl., at 36-37.) The relevant subsections of the CO Dealer Act are as follows:

- Subsection (1)(j)(I) makes it unlawful for a manufacturer, distributor, or manufacturer representative to "fail or refuse to offer to its same line-make franchised dealers all models manufactured for that line-make."

- Subsection (1)(p) makes it unlawful for a manufacturer, distributor, or manufacturer representative to "discriminate between or refuse to offer to its same-line-make franchised dealers all models manufactured for that line-make based upon reasonable sales and service standards."

- Subsection (1)(q) makes it unlawful for a manufacturer, distributor, or manufacturer representative to "fail to make practically available an incentive, rebate, bonus, or other similar benefit to a powersports vehicle dealer that is offered to another powersports vehicle dealer of the same line-make within this state."

- Subsection (1)(x) prohibits sales and offers to sell new powersports vehicles "to a franchised powersports vehicle dealer with whom the manufacturer has a franchise agreement" at a lower price than is offered to "any other powersports vehicle dealer with whom the manufacturer has a franchise agreement."

- Subsection (1)(z) prohibits the use of "an unreasonable, arbitrary, or unfair performance standard in determining a powersport vehicle dealer's compliance with its franchise agreement" and "fail[ure] to communicate, upon the request of the dealer, any performance standard in a clear and concise writing to a powersport vehicle dealer before applying the standard to the powersports vehicle dealer."

Colo. Rev. Stat. § 44-20-423(1)(j)(I), (1)(p), (1)(q), (1)(x), (1)(z).

Defendants argue that Plaintiffs fail to state a claim for violations of these subsections because the alleged violations are not based on the "designated line-make" set forth in the Agreement. (Doc. 10, at 6-7.) Defendants specifically argue: (1) the alleged violation under subsection (1)(j)(I) for "not offer[ing] Plaintiffs the Tracker Off[-]Road products and pricing" fails because the Tracker Off-Road vehicles and Arctic Car vehicles are not the same "line-make"; (2) the alleged violation under subsection (1)(p) for discriminating or refusing to offer "all of the models manufactured by Arctic Cat" which includes the Tracker Off-Road vehicles fails for the same reason; (3) the alleged violation under subsection (1)(q) fails because the Complaint does not allege any facts that another Colorado dealer "of the same line-make" was offered anything dealer was not and any allegation

21

of "differential financing, product pricing, and sales activity all relate to [Tracker]" which is not of the same line-make; (4) the alleged violation under subsection (1)(x) fails because the Complaint does not allege discriminatory pricing to other dealers of the designated line-make and any allegation of more favorable pricing regarding the Tracker is not relevant because the Tracker is not the designated line-make under the Agreement; and (5) the alleged violation under subsection (1)(z) fails because the Complaint does not allege any facts that could establish Defendants used "an unreasonable, arbitrary, or unfair performed standard" or failed to communicate any standard "in clear and concise writing" before it applied. (Id. at 6-7 n.9-13 (citations omitted).)

In response, Plaintiffs argue that Defendants' argument "misses the bulk of Plaintiffs' Complaint." (Doc. 18, at 7.) Plaintiffs argue the "new line" of Tracker powersports vehicles TSV designed in partnership with Tracker "were just carbon copies of Arctic Cat vehicles, just with a different name slapped on the side." (Id.) According to Plaintiffs, the Tracker powersports vehicles were "visually identical (other than the stickers) and had the same measurements, same engines, same attributes, same features, and same capabilities" as the Arctic Cat powersports vehicles in the Agreement, and the only real difference was the price. (Id. at 7-8.) Plaintiffs argue "Defendants fraudulently and/or negligently misrepresented that the Tracker vehicles are a different line-make than Arctic Cat vehicles," and "Defendants'

22

attempted application of their own definition of terms . . . are immaterial and unpersuasive." (Id. at 8.)   In their reply, Defendants argue the definition of "line-make" is found in the CO Dealer Act and defined as "a group or series of powersports vehicles that have the same brand identification or brand name, based upon the powersports vehicle manufacturer's trademark, trade name, or logo." (Doc. 32, at 4.)   Defendants argue that even assuming "Tracker vehicles were just carbon copies of the Arctic Cat vehicles, just with a different name slapped on the side[,]" like Plaintiffs describe, they are not the same "line-make" because they have different brand identification or brand name. (Id. at 4-5.)

The Court finds the allegation that the powersports vehicles were visually identical and had the same measurements, engines, attributes, features, and capabilities is not enough to find that the Arctic Cat and Tracker vehicles were the same "line-make." The statute clearly defines "line-make" as being based upon the brand identification or brand name, not the visual or mechanical aspects of the powersports vehicles, but there is no allegation in the Complaint the Arctic Cat and Tracker vehicles have the "same brand identification or brand name." See Colo. Rev. Stat. § 44-40-402(7) ("'Line-make' means a group or series of powersports vehicles that have the same brand identification or brand name, based upon the powersports vehicle manufacturer's trademark, trade name, or logo."). Moreover, the Arctic Cat trademark is used to

23

identify vehicles sold through the TSV dealer network and the Tracker Off-Road trademark is used to identify vehicles sold through the Bass Pro Shops, Cabela, and Tracker dealer network. (Doc. 32, at 4-5.)   Therefore, Plaintiffs' allegations are not enough to establish that the Arctic Cat and Tracker vehicles were the same "line-make" required for a violation under subsection (1)(j)(I), (1)(p), (1)(q), and (1)(x).  Accordingly, Plaintiffs' claims for violations under these subsections are dismissed for failure to state a claim because the alleged violations are based upon allegations relating to the Tracker Off-Road.  Moreover, the Court also agrees with Defendants that the Complaint does not allege any facts that relate to subsection (1)(z), and therefore, Plaintiffs' claim under subsection (1)(z) is dismissed for insufficient factual allegations.

   3. <u>Violation of subsections (1)(b), (1)(c), and (1)(k) under the CO Dealer Act</u>

   In the next group of violation allegations, Parker Powersports alleges the following against the Defendants:

> ([1]) Defendants have coerced or attempted to coerce Plaintiffs to order unwanted product, accept unwanted product, and otherwise perform[] acts that are financially detrimental to Plaintiffs, under the threat of losing the Arctic Cat franchise, in violation of [Section] 44-20-423(1)(b);
>
> ([2]) Defendants have coerced or attempted to coerce Plaintiffs to accept delivery of Arctic Cat vehicles that Plaintiffs did not order, in violation of [Section] 44-20-423(1)(c); [and]
>
> ***

24

> ([3]) Defendants coerced or attempted to coerce Plaintiffs
> from carrying other line-makes of new powersports vehicles,
> such as Kymco, in violation of [Section] 44-20-423(1)(k)[.]

(Compl., at 35-36.) The relevant subsections of the CO Dealer Act
are as follows:

- Subsection (1)(b) makes it unlawful for a
  manufacturer, distributor, or manufacturer
  representative to "coerce or attempt to coerce" a
  dealer to take financially detrimental acts or to
  enter into a financially detrimental agreement "by
  threatening to cancel or not renew" the franchise
  agreement.

- Subsection (1)(c) makes it unlawful for a
  manufacturer, distributor, or manufacturer
  representative to "coerce or attempt to coerce [a
  dealer] to accept delivery of a powersports vehicle
  . . . that have not been ordered by the dealer."

- Subsection (1)(k) makes it unlawful for a
  manufacturer, distributor, or manufacturer
  representative to "require, coerce, or attempt to
  coerce [a dealer] to refrain from participation in
  the management of, investment in, or acquisition of
  another line-make of new powersports vehicles or
  related products."

Colo. Rev. Stat. § 44-20-423(1)(b), (1)(c), (1)(k).

Defendants argue that Plaintiffs fail to state a claim for
the violations listed above because they have not sufficiently
pleaded the requisite "coercion." (Doc. 10, at 7-9.) Defendants
specifically argue: (1) the alleged violation of subsection (1)(b)
fails because the Complaint does not allege that Defendants
threatened to cancel or renew the franchise, rather, Plaintiffs
chose to close the dealership; (2) the alleged violation under
subsection (1)(c) fails because the allegation that Defendants
implied that Plaintiffs "would need to order more powersports

vehicles" since its "most recent orders were not compliant with [TSV's] required minimums" in the Agreement is insufficient to support a claim for coercion; and (3) the alleged violation under subsection (1)(k) fails because the Complaint does not allege that Defendants coerced Plaintiffs to refrain from carrying competing products, such as Kymco, nor does the Complaint allege that Plaintiffs provided the requisite written notice required under subsection (1)(k)(III) before carrying the additional brand. (Id. at 7-9 (citations omitted).)

In their response, Plaintiffs argue, without citing to the Complaint, that they were "coerced by Defendants under the threat of losing their dealership." (Doc. 18, at 9.) According to Plaintiffs, Defendants "accused [Mr.] Allen of replacing his Arctic Cat sales with [Kymco]" and told Plaintiffs that they were required to stock and sell through "non-current product." (Id. at 10.) Plaintiffs argue that when Mr. Allen told Defendants he could not purchase "unsellable, old-model vehicles because it would be financially detrimental to his dealership and stated that Defendants [were] no longer making available the vehicles Plaintiffs' customers want," Defendants "refused to budge." (Id. at 10-11.) Plaintiffs argue Defendants violated subsections (1)(b) and (1)(c) when they gave Plaintiffs an "ultimatum" to "either undertake the financially detrimental act of paying for and stocking a minimum of Defendants' old product" or "close shop." (Id. at 12-13.) Plaintiffs also argue their decision to close the

26

dealership is immaterial because of the attempted coercion, and moreover, Defendants effectively committed a constructive termination. (Id.) As for the violation under subsection (1)(k), Plaintiffs argue Defendants "falsely claimed Plaintiffs' sales of Kymco were negatively affecting sales of Defendants' product." (Id. at 13.)

The Court agrees with Defendants that in order for Plaintiffs to sufficiently plead the three alleged violations in this section, they must plead the requisite "coercion." (See Doc. 10, at 7-9.) Although Plaintiffs admit they decided to close the dealership on their own, they argue that fact is immaterial because they were "coerced" to do so when faced with an ultimatum of either buying a minimum of vehicles that their customers did not want or closing down the dealership. (Doc. 18, at 12.) However, upon reviewing the allegations in the Complaint, the Court is not convinced that Defendants coerced or forced Plaintiffs to close their dealership in violation of subsection (1)(b). While the Agreement required Parker Powersports to maintain a minimum stock of TSV powersports vehicles, Defendants were merely asserting their legal rights under the Agreement when it expressed concerns that Plaintiffs were failing to meet these minimums. See Gage v. Gen. Motors Corp., 796 F.2d 345, 348 (10th Cir. 1986) ("The exercise of . . . legal rights cannot amount to coercion . . . as a matter of law."). For the same reasons, the Court finds that Plaintiffs have not pleaded the coercion required under subsection (1)(c).

Additionally, Plaintiffs claim Defendants coerced them to drop Kymco, a competing brand, in violation of subsection (1)(k), but nowhere in the Complaint do Plaintiffs allege a fact that would show coercion from the Defendants. Moreover, as Defendants argue, even if Plaintiffs could show coercion, they did not satisfy the notice requirement under subsection (1)(k) to carry a competing brand and therefore cannot assert a claim. (Doc. 10, at 8-9.) Accordingly, because Plaintiffs fail to plead the requisite "coercion" underlying the three alleged violations, Plaintiffs' claims of violations under subsections (1)(b), (1)(c), and (1)(k) are dismissed for failure to state a claim.

   4. <u>Violations of Subsections (1)(e), (1)(l), and (1)(r)(I) and (u) under the CO Dealer Act</u>

   Lastly, Plaintiffs alleges the following against the Defendants:

   ([1]) Defendants withheld, reduced, or unreasonably delayed without just cause the delivery [of] Arctic Cat powersports vehicles due to Plaintiffs, in violation of [Section] 44-20-423(1)(e);

   ***

   ([2]) Defendants failed to pay Plaintiffs, within 90 days of the termination of Plaintiffs' franchise, any and all of the following, in violation of [Section] 44-20-423(1)(l):
      i. Dealer cost (plus delivery and taxes) of unused and unsold vehicles in Plaintiffs' inventory that were acquired within the previous 12 months;
      ii. Plaintiffs' cost for all unused and unsold parts and accessories in original packaging;
      iii. Fa[i]r market value for all Arctic Cat signage in Plaintiffs' possession;
      iv. Fa[i]r market value for all special tools and equipment; and

28

> v. The cost of transporting, handling, packing, and loading the above.

> ([3]) Defendants failed to pay Plaintiffs, within 90 days of the termination of Plaintiffs' franchise:
>> i. The cost of the lease for the dealer facilities for one year, in violation of [Section] 44-20-423(1)(r)(I);
>> ii. The cost of any upgrades or alterations to Plaintiffs' facilities that were required by [TSV] within the previous 5 years, in violation of [Section] 44-20-423(1)(u).

(Compl., at 36.)   The relevant subsections of the CO Dealer Act are as follows:

- Subsection (1)(e) makes it unlawful for a manufacturer, distributor, or manufacturer representative to "withhold, reduce, or delay unreasonably or without just cause delivery of powersports vehicles, powersports vehicle parts and accessories, commodities, or money due powersports vehicle dealers for warranty work done by any powersports vehicle dealer.

- Subsection (1)(l) makes it unlawful for a manufacturer, distributor, or manufacturer representative to "fail to pay to a powersports vehicle dealer, within ninety days after the termination, cancellation, or nonrenewal of a franchise" certain costs and the fair market value of certain products.

- Subsection (1)(r)(I) and (u) mandate certain post-termination payment obligations to a dealer from a manufacturer, distributor, or manufacturer representative related to the leasing costs for facilities and cost of upgrades and alterations to the dealer's facilities made in the previous five years that were required by the manufacturer, distributor, or manufacturer representative "[w]ithin ninety days after the termination, cancellation, or nonrenewal of a franchise for the failure of a dealer to meet performance sales and service obligations or after the termination, elimination, or cessation of a line-make."

Colo. Rev. Stat. § 44-20-423(1)(e), (1)(l), (1)(r)(I), (1)(u).

Defendants argue Plaintiffs fail to state a claim for the violations listed above for various reasons. (Doc. 10, at 9-11.) First, Defendants argue Plaintiffs only make a threadbare allegation for a violation under subsection (1)(e) because they do not allege what products were "due" to the dealer, if they ordered any and when, when or how Defendants withheld or delayed delivering products ordered by the dealer, and what made such actions unreasonable or without just cause. (Id. at 9.) Second, Defendants argue the only allegation in support of a violation of subsection (1)(l) is the allegation that Defendants "would not be taking back the [four] new and unmodified [Arctic Cat] vehicles." (Id. at 10.) However, Defendants argue this allegation is not sufficient because the subsection only requires manufacturers to buy back vehicles that were acquired from a manufacturer "in the ordinary course of business within the previous twelve months," but Plaintiffs do not allege when they acquired these Arctic Cat vehicles or that they acquired these vehicles during the time period covered by the subsection. (Id.) Additionally, Defendants argue the Complaint has no allegations relating to the parts, accessories, signage, tools, or equipment. (Id.) Lastly, Defendants argue subsection (1)(r)(I) only applies if the dealer was terminated, cancelled, or not renewed for failure "to meet performance sales and service obligations" or if TSV terminated, eliminated, or ceased a line-make, but according to Defendants neither happened here and the Complaint does not allege any facts

that show otherwise. (Id.) Moreover, Defendants argue the payment obligations to a dealer for facility upgrades under subsection (1)(u) only applies if the upgrades or alterations to their existing facilities were required by the manufacturer, but yet again, the Complaint does not allege any facts that show this. (Id. at 10-11.)

Plaintiffs respond to each of Defendants' arguments. (Doc. 18, at 14-19.) First, Plaintiffs argue the Complaint sufficiently pleads a violation of subsection (1)(e) based on the "limited vehicle availability" that "forced [them] to stock alternate brands" and because the line-make distinction between an Arctic Cat and Tracker vehicles was "effectively nonexistent, Defendants had clearly — both unreasonably and without just cause — devoted all their manufacturing and distributor resources to stocking the Tracker outlets with new models" while Plaintiffs were stuck with buying older models. (Id. at 14-15.) Second, for subsection (1)(l)(I), Plaintiffs argue that "Defendants' arguments [] demand more from a Complaint than Plaintiffs are required to plead." (Id. at 17.) Plaintiffs contend that "Defendants failed to pay Plaintiffs for inventory that was acquired within the previous 12 months" without citing to where in the Complaint this allegation is made. (Id. at 16.) Plaintiffs also argue that Defendants failed to pay "for Plaintiffs' cost of all unused and unsold parts and accessories, for the fair market value for all Arctic Cat signage in Plaintiffs' possession, for the fair market value for

all special tools and equipment, and for the cost of transporting, handling, packing, and loading all of the above." (Id. at 16–17.) Lastly, for subsection (1)(r)(I), Plaintiffs argue Defendants misinterpret the subsection to apply "only if the Dealer was terminated for a failure to meet performance sales and service obligations or if [TSV] eliminated a line-make." (Id. at 17–18 (quotations omitted).)  According to Plaintiffs, only "non-renewal" has a "co-requirement" that the nonrenewal was due to failure "to meet performance sales and service obligations," whereas "termination" and "cancellation" stand alone. (Id. at 18.) As for subsection (1)(u), Plaintiffs argue that, pursuant to the Agreement, they were required to "obtain and maintain facilities equipped to [TSV's] sole satisfaction" and to "set up and use . . . a [TSV] approved computerized system for communications with [TSV]."  (Id. at 18–19 (citations and quotations omitted).)

For the alleged violation of subsection (1)(e), the Court finds Plaintiffs' argument relying on the allegation that the Arctic Cat and Tracker vehicles were the same "line-make" fails because as discussed above, the allegations are not sufficient to establish these vehicles were the same "line-make." Additionally, the Court agrees with Defendants' argument in their reply that an allegation that there was "limited vehicle availability" of Arctic Cat vehicles does not show why this was unreasonable or without just cause. (See Doc. 32, at 7.) Because the Complaint does not

32

sufficiently plead how Defendants withheld, reduced, or delayed delivery of Arctic Cat powersports vehicles or even if they did, why it was unreasonable or without just cause, Plaintiffs' claim for violation under subsection (1)(e) is dismissed.

Turning to the allegation of violation under subsection (1)(l)(I), Defendants correctly point out that the subsection applies to powersports vehicles that were acquired within the previous twelve months, but Plaintiffs do not allege when they acquired these Arctic Cat vehicles or that they acquired these vehicles during the time period covered by the subsection. (Doc. 10, at 10.) Moreover, Plaintiffs' allegations regarding the parts, accessories, signs, tools, and equipment merely repeats the language of the subsection, and therefore is not sufficiently pleaded. Therefore, Plaintiffs' claim for violation under subsection (1)(l)(I) is dismissed.

Third, regarding the allegation that Defendants violated subsections (1)(r)(I), the Court finds that "failure of a dealer to meet performance sales and service obligations" applies to the terminations, cancellations, and nonrenewals, and not just nonrenewals like Plaintiffs argued. See Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1169 (2021) ("Under conventional rules of grammar, when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series." (alterations adopted, citations and quotations omitted).) Therefore, in order

33

for the subsection to apply, the termination must have been due to the failure of a dealer to meet performance sales and service obligations, but here, the dealership was not terminated due to Plaintiffs' failure, Plaintiffs closed the dealership themselves. Because Plaintiffs' claim under subsection (1)(r)(I) does not meet the requisite condition, it is dismissed.

Lastly, regarding the alleged violation of subsection (1)(u), the Court finds Plaintiffs' claim fails because the Complaint does not sufficiently allege that Defendants required Plaintiffs to upgrade or alter the facilities. Accordingly, Plaintiffs' claims for violation of subsections (1)(e), (1)(l)(I), (1)(r)(I), and (1)(u) are dismissed for failure to state a claim.

**D. CO Consumer Protection Act Claim (Count VII)**

Finally, Plaintiffs bring a claim under the CO Consumer Protection Act, alleging that the Defendants engaged in unfair or deceptive trade practices. (Compl., at 37.) Specifically, they argue TSV violated Section 6-1-106(1)(k) when it "acted intentionally, maliciously, and/or recklessly" by "advertis[ing] and promot[ing] itself to Plaintiffs under the guise of having Plaintiffs become an authorized Arctic Cat powersports vehicle dealer" and "refused to buy back the product it had required Plaintiffs to purchase" after it caused Parker Powersports to close. (Id. at 37.) Defendants argue Plaintiffs' claim under the CO Consumer Protection Act must be dismissed because Plaintiffs lack standing, and even if they have standing, they failed to

allege any conduct that falls within "Deceptive Trade Practices" under the CO Consumer Protection Act. (Doc. 10, at 18.) Defendants argue that to the extent Plaintiffs allege "unfair trade practices actionable at common law or under other statutes" under Section 6-1-106(3), Plaintiffs fail to show that Defendants' "challenged practice significantly impact[ed] the public as actual or potential consumers of [Defendants'] goods, services, or property." (Id. (citation omitted).) In response, Plaintiffs argue that they have standing under Section 6-1-113(1)(c) of the CO Consumer Protection Act, and they alleged "Defendants' deceptive practices were not unique to their relationship with Plaintiffs, but rather affected all of Defendants' existing and prospective powersports vehicle dealers." (Doc. 18, at 31-32 (citations and quotation omitted).)

First, Defendants argue Plaintiffs do not have standing as "consumers" to bring a claim for violation of the CO Consumer Protection Act. (Doc. 10, at 18.) Plaintiffs argue that they have standing under Section 6-1-113(1)(c), which provides that "any person who . . . [i]n the course of the person's business or occupation, is injured as a result of such deceptive trade practice" may bring a claim. (Doc. 18, at 31.) The Court agrees with Plaintiffs that they have standing under this Section because they alleged injuries during the course of running the dealership, and therefore will address whether Plaintiffs sufficiently pleaded a deceptive trade practice under the CO Consumer Protection Act.

35

Under Colorado law, to state a claim for violation of the Consumer Protection Act, Plaintiffs must show that Defendants' "challenged practice significantly impacts the public as actual or potential consumers of [Defendants'] goods, services, or property." Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc., 62 P.3d 142, 148-49 (Colo. 2003). Defendants argue that Plaintiffs claim must be dismissed because they do not sufficiently allege a public impact. (Doc. 10, at 18; Doc. 32, at 15-16.) Plaintiffs argue that the Complaint shows a public impact because "Defendants' deceptive practices were not unique to their relationship with Plaintiffs, but rather affected all of Defendants' existing and prospective powersports vehicle dealers." (Doc. 18, at 32 (citations and quotations omitted).) Upon reviewing the paragraphs that Plaintiffs cite in support and looking at the Complaint as a whole, the Court finds that the allegations that apply to existing and prospective powersports vehicle dealers are Defendants' statements and promises that were made while marketing and that dealers signed a "Dealer Agreement." (See Compl., at 7-8, 17-18.) Plaintiffs also argue that Defendants forced other dealerships to close (Doc. 18, at 33), but again reviewing the Complaint and the paragraphs Plaintiff rely on, the Complaint is void of any allegation that other dealerships closed. Although Defendants did make statements and promises to existing and prospective powersports vehicle dealers, the Complaint does not allege that any of these other dealers were impacted by these

statements or promises. Moreover, the fact that prospective dealers were required to sign a dealer agreement to become a TSV-affiliated dealership does not show "public impact" because entering a contract is a commercial transaction that is private in nature. See U.S. Welding, Inc. v. Burroughs Corp., 615 F. Supp. 554, 555 (D. Colo. 1985) ("[T]he [CO Consumer Protection Act] is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong.") (citations omitted). Because the Complaint does not sufficiently plead a "public impact" of Defendants' alleged deceptive trade practices, Plaintiffs' claim under the CO Consumer Protection Act is dismissed.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (Doc. 10) is **GRANTED** and Plaintiffs' Complaint is **DISMISSED**. The **CLERK** is **DIRECTED** to terminate all pending motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 29th day of March, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA